FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAR 10 AM 11: 29

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 10 1999

| | |
|---|---|
| PAUL E. MARSHALL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NUMBER |
| ) | |
| CORRETTI, NEWSOM AND HAWKINS, ) | 97-C-0568-S |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF OPINION GRANTING SUMMARY JUDGMENT

This case raises the issue of whether the defendant law firm, Corretti & Newsom, P.C. ("C&N") and its clients, defendants Sidney and Mackey Opal Johnson, violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), when they foreclosed on real property of the plaintiffs Paul and Dianne Marshall. Based on the undisputed facts which follow, the court concludes that the automatic stay provision was not offended by the actions of the defendants. They are therefore entitled to judgment as a matter of law.

I. The Undisputed Facts

1. On August 6, 1992, the Johnson defendants ("the Johnsons") sold to the plaintiffs a residence located at 1345

Princeton Avenue in the City of Birmingham, Alabama. The purchase was secured by a $35,000 mortgage note on the property, issued by the plaintiffs to the Johnsons.

2. Sometime in 1994 or 1995, the Marshalls moved from Birmingham to Hazelhurst, Mississippi.

3. After moving to Mississippi, the Marshalls failed to make mortgage payments on the Birmingham property as they fell due. They also failed to maintain insurance on the property; and they failed to maintain water and sewer obligations on the property, as required under the terms of the mortgage note.

4. The Johnsons retained the C&N law firm. On June 5, 1995, C&N sent to the Marshalls, by certified mail, a notice of acceleration of the mortgage note. The notice was sent to the Birmingham address of the Marshalls. On June 9, 1995, C&N received through the mail a Return Receipt, reflecting a signature of Paul Marshall.

5. On June 27, 1995, C&N sent to the Marshalls by certified mail at their Birmingham and Mississippi addresses, separate notices that foreclosure proceedings had been commenced, and that a foreclosure sale of the property would be held on July

2

28, 1998, at the Jefferson County Courthouse in Birmingham, Alabama.

6. On June 28, 1996, C&N received a letter from Barbara Puckett of Legal Services of Metro Birmingham, Inc. In the letter, Ms. Luckett advised that she had been consulted by plaintiff Paul Marshall concerning the acceleration notice; and she requested that she be provided with a copy of the mortgage note and a monthly accounting of the mortgage balance.

7. On July 3, C&N wrote to Ms. Luckett and enclosed a copy of the mortgage, mortgage note, and amortization schedule. It advised her of the impending foreclosure sale on July 28.

8. The certified letter sent by C&N to the plaintiffs at their Mississippi address (notifying them of the foreclosure sale) was returned to C&N by the Postal Service on July 22, 1995, as "unclaimed."

9. On July 25, 1995, C&N received a return receipt of the letter notice of foreclosure from the plaintiff's Birmingham address, reflecting a signature of "P Bolt" as the agent of the plaintiffs.

10. At 4:02 P.M. on July 26, 1995, the Marshalls filed a *pro se* bankruptcy petition under Chapter 13 of the Bankruptcy Code in the Bankruptcy court for the Southern District of Mississippi, Jackson Division. The only asset listed in the petition was the Birmingham property.

11. The bankruptcy petition lists C&N's facsimile ("fax") number as (205) 252-3679.

12. Immediately after the Marshalls filed their bankruptcy petition, they went to an office supply company, Office Environments, Inc., at 100 East Capitol Street, Jackson, Mississippi, and, at 4:10 P.M., faxed a copy of the petition and the automatic stay to C&N at Fax No. (205) 252-3679.

13. For over 15 years, fax number (205) 252-3679 has been assigned to the *Alabama Messenger*, the newspaper selected by C&N to publish the notice of the foreclosure sale.

14. At all material times, the fax number of C&N was (205) 322-4692.

15. Prior to commencing the foreclosure sale on June 28, C&N confirmed with the Bankruptcy Court for the Northern District of Alabama, Birmingham Division, the district in which the property

is located, that the Marshalls had not filed a bankruptcy petition in that court.

16. The foreclosure sale took place as duly scheduled. The property was sold to the Johnsons as the highest bidders. Immediately following, and on the date of the foreclosure sale, C&N gave notice to the Marshalls to vacate the premises.

17. On August 3, 1995, Paul Marshall telephoned C&N and advised it of the filing of the bankruptcy petition.

18. On August 4, 1995, C&N received a faxed copy of a notice of the Marshalls' bankruptcy and automatic stay. The fax indicated, in longhand: "Call c/o Carroll Rhodes, atty Fax (601) 894-1464[;] (601) 894-4323."

19. C&N communicated by fax with Carroll Rhodes on August 7. It advised him that the firm was unaware of the Marshall's bankruptcy prior to August 4, and that it had proceeded with foreclosure only after it determined that a bankruptcy petition had not been filed in the district in which the property was located. The fax concluded:

> Please forward to our office a complete copy of the Voluntary Petition for Bankruptcy and a copy of the Proposed Plan at your earliest convenience. We will, of course, immediately

5

>     file a deed setting aside the foreclosure and
>     stop all ejectment proceedings upon receipt of
>     the information requested.

(Defs.' Ex. ("DX") #17, App. In Support of Defs.' Mot. For Summ.J.) Rhodes's office received this fax transmittal.

  20. C&N never received a response from Carroll Rhodes.

  21. The Mississippi Bankruptcy Court set an evidentiary hearing on the Marshalls' Application to Pay Filing Fees in Installments for August 10, 1995. (DX 11E). The Marshalls failed to appear at the scheduled hearing. The court denied the application. (DX 11F).

  22. On August 10, 1995, the Marshalls' bankruptcy petition was dismissed by the Bankruptcy Court for the Southern District of Mississippi, Jackson Division. (DX 11F). Upon dismissal of the case, the automatic stay was lifted. *See* 11 U.S.C. § 362(c)(2)(B). The Marshalls bankruptcy case was formally closed on August 31, 1995.

## II. The Applicable Law

"[A]n individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and

6

attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). "When the automatic stay is violated, courts generally find the violator in contempt under 11 U.S.C. § 105 if the violation is 'willful.'" *Jove Eng'g, Inc., v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). To prove a willful violation of the automatic stay, therefore, a plaintiff must establish by a preponderance of the evidence that the defendant (1) knew of the existence of the automatic stay, and (2) intentionally acted as though the stay were not in existence. *Id.* "[W]illfulness generally connotes intentional action taken with at least callous indifference for the consequences." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 (11th Cir. 1986).

### III. Analysis

The defendants are entitled to judgment as a matter of law.

There is simply no substantial evidence that the defendants were aware of the filing of the plaintiffs' bankruptcy

petition at the time of the foreclosure sale. As the facts make abundantly clear, the plaintiffs sent the notice of bankruptcy filing to the wrong fax number. The error was that of the plaintiffs; it cannot be attributed in any way to the defendants. The defendants had no reason to speculate that the bankruptcy petition would be filed in Mississippi, rather than in the district in which the property was located and in which the scheduled foreclosure sale would occur. And the defendants had every reason to assume that the plaintiffs were represented by a lawyer, who surely would have known how to effect actual notice of the bankruptcy filing. A phone call would have sufficed. In any event, there is no reasonable or logical basis for an inference of awareness by the defendants that the plaintiffs had filed a bankruptcy petition in Mississippi.

No reasonable jury could find that the defendants knew of the existence of the automatic stay at the time when they proceeded with the foreclosure sale.

While it is not necessary to reach the issue, it is also transparently clear that no reasonable trier of fact could find

that the plaintiffs suffered damages.  Their bankruptcy case was dismissed because they failed to pay the filing fee.  More important, as soon as the defendants learned of the automatic stay, they offered to set aside the foreclosure on receipt of the plaintiff's bankruptcy petition and proposed plan.  The plaintiffs ignored the offer and filed this lawsuit.

By separate order, summary and final judgment will be entered in favor of the defendants and against the plaintiffs.

DONE this _9th_ day of March, 1999.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON